RECEIVED

SEP 1 3 2013

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA
BY: _____

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

---

FRANKS INVESTMENT CO., LLC

versus

UNION PACIFIC RAILROAD CO.

CIVIL ACTION NO. 11-1290
JUDGE TOM STAGG

---

## MEMORANDUM RULING

Before the court is a motion for summary judgment filed by the defendant, Union Pacific Railroad Company ("Union Pacific"). See Record Document 23. For the reasons set forth below, Union Pacific's motion for summary judgment is **GRANTED**.

## I. BACKGROUND[1]

Members of the Levy family owned a large tract of land in Caddo Parish. They sold a strip of the land to the Texas & Pacific Railway Company ("Texas & Pacific") in 1923. The written act executed by the parties and recorded in the Caddo Parish conveyance records recited a cash consideration and, among other things, it was

---

[1] The background section is largely drawn from the Report and Recommendation issued by Magistrate Judge Mark Hornsby regarding a previously filed motion to dismiss, confirmed by a review of the record. See Record Document 12.

agreed that Texas & Pacific would provide three crossings across the strip at points indicated on an attached blueprint. The Levy property is now owned by Franks Investment Company, LLC ("Franks"). The strip of railroad property, which sits between the Franks property and Louisiana Highway 1, is owned by Union Pacific.

Union Pacific, in recent years, announced plans to close the three crossings referenced in the 1923 act (plus one other crossing that benefitted the Franks property). In 2008, Franks filed a possessory action in this court seeking recognition of its possession of the crossings. After a federal preemption defense was held inapplicable, Franks Investment Company, LLC v. Union Pacific Railroad Company, 593 F.3d 404 (5th Cir. 2010) (en banc), this court held a trial and ruled that Franks was a precarious possessor that did not have the right to assert a possessory action. See Franks Inv. Co., LLC v. Union Pac. R. Co., 2011 WL 6157484 (W.D. La. 2011). The Fifth Circuit Court of Appeals affirmed this court's opinion on March 22, 2012. See Franks Inv. Co., LLC v. Union Pac. R. Co., 464 F. App'x 415 (5th Cir. 2012) (in a four line per curiam opinion).

Within weeks of this court's judgment dismissing the possessory action, Franks filed this new civil action. It is a petitory action, which is an action brought by a person who claims the ownership of, but does not possess, immovable property, against a person in possession or claiming adverse ownership, for the purpose of

obtaining a judgment recognizing the plaintiff's ownership. See La. Code Civ. P. art. 3651. Franks alleges that it is entitled to be recognized as owner of a servitude of passage located at the three crossings as shown on the blueprint attached to the 1923 deed and referenced in the recorded act.

Union Pacific responded by filing a motion to dismiss, arguing that the act created a personal, as opposed to predial, servitude that did not run with the land and affect the current owners. The magistrate judge issued a Report and Recommendation, recommending that the motion to dismiss be granted. This court declined to adopt the Report and Recommendation and instead denied Union Pacific's motion to dismiss, concluding that the court did "not have the necessary facts to resolve the legal arguments presented at this mere pleadings stage." Record Document 17. This court further noted, however, that the denial of the motion to dismiss did "not prevent the defendant from raising this issue again in a fully supported motion for summary judgment." Id. Union Pacific has now filed its motion for summary judgment. Franks has opposed the motion and Union Pacific has filed a reply.

## II. LAW AND ANALYSIS

A.  **Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil

Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "Rule 56 [(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005). The Fifth Circuit has cautioned that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment. Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).

---

[2]The court notes that amended Rule 56 requires that there be "no genuine dispute as to any material fact," but this change does not alter the court's analysis. Fed R. Civ. P. 56(a) and advisory committee's note.

**B.    Relevant Facts.[3]**

In 1923, pursuant to an act of conveyance ("the 1923 deed") recorded in the Caddo Parish property records, the Levy family conveyed to Texas & Pacific a strip of land. See Record Document 1 at ¶ 4. In the same act, Texas & Pacific "conveyed to the Levys" three crossings across the strip of land, at points indicated on an attached blueprint. The referenced crossings traverse the railroad property, connecting a large tract of land then owned by the Levys to the west of the railroad property. Louisiana Highway 1 is located on the east side of the railroad property. See id. at ¶5.

The three crossings were constructed in accordance with the deed.[4] Franks is the successor in title to the Levys. Union Pacific is the successor in title to Texas & Pacific. Union Pacific claims to possess the three crossings as owner. See id.

Franks asserts that the deed conveyed a servitude of passage to the Levys, and that Franks, as successor in title, is entitled to be recognized as owner of a servitude of passage at the location of the three crossings. Alternatively, Franks seeks a declaratory judgment that the 1923 deed requires Union Pacific to now grant Franks

---

[3]The facts are drawn from the previously issued Report and Recommendation, as confirmed by a review of the record.

[4]A fourth crossing was also built, but it is not at issue in this suit.

5

three servitudes of passage at the locations specified in the deed.

The 1923 deed recites the conveyance from the Levys to the railroad of the strip of land for $3,106.00. See Record Document 1, Ex. A. The deed then states: "To have and to hold said described property unto said purchaser, its successors and assigns forever." Id. The last paragraph of the 1923 deed then sets forth the language that gives rise to this action:

> It is understood and agreed that the said Texas & Pacific Railway Company shall fence said strip of ground and shall maintain said fence at its own expense and shall provide three crossings across said strip at the points indicated on said Blue Print hereto attached and made part hereof, and the said Texas & Pacific Railway hereby binds itself, its successors and assigns, to furnish proper drainage out-lets across the land hereinabove conveyed.

Id. Franks does not allege that closure of the three crossings will leave its estate enclosed. This court has previously found in the possessory action that "there are at least three other points of access to the property: two off of Flournoy-Lucas Road and one off of Leonard Road." Franks Inv. Co., LLC v. Union Pac. R. Co., 2011 WL 6157484 (W.D. La. 2011).

C.   Analysis.[5]

As mentioned, this matter has come before the court previously by way of a motion to dismiss. The magistrate judge, in a well-reasoned opinion, agreed with Union Pacific's reading of the deed and issued a Report and Recommendation recommending that Union Pacific's motion to dismiss be granted and that the case by dismissed. This court, however, was concerned that, at the early pleadings state, the dismissal of the case was premature. Therefore, the court declined to adopt the magistrate judge's Report and Recommendation and left it to the parties to determine whether, following a period of discovery, a fully supported motion for summary judgment would resolve the dispute. Union Pacific has now filed its motion for summary judgment, seeking dismissal of Franks's claims.[6] Discovery is complete and, as accurately noted by Union Pacific, no new evidence has been discovered that

---

[5]As noted by the magistrate judge, the parties have briefed the case with reference to the current Civil Code articles governing servitudes. Neither party contends that the articles in effect at the time of the 1923 instrument would direct a different outcome, so the court has assessed the issues with reference to the current articles, as well as the jurisprudence that has developed in this area over the intervening nine decades.

[6]In its motion for summary judgment, Union Pacific also requests that this court dismiss Franks's claim to crossing number three. In addition, Union Pacific seeks a restriction on the use of the crossings if the court denies its motion for summary judgment. As this court grants Union Pacific's motion and dismisses all of Franks's claims, these issues are **MOOT**.

7

would bear on the legal interpretation of the 1923 deed or that would alter the magistrate judge's analysis of the claims.[7] Furthermore, this court concludes that the document is not ambiguous and that resorting to evidence outside of the four corners is unnecessary.

As accurately noted by the magistrate judge, the dispositive issue is whether the "crossings provision" in the 1923 deed created a predial servitude, which runs with the land and binds Union Pacific, or a personal servitude or obligation for the benefit of the Levys that bound only the parties to the deed.[8] A personal servitude is a charge on a thing for the benefit of a person. See La. Civ. Code art. 534. Predial servitudes are established on, or for the benefit of, distinct corporeal immovables.

---

[7]Union Pacific accurately notes that "Franks has failed to uncover any evidence that bears on the 1923 deed: no witnesses, no drafts, letter agreements, or other documents evidencing the parties' negotiations or intent." Record Document 30 at 2. The only "evidence" submitted by Franks is two affidavits in support of its opposition to Union Pacific's motion for summary judgment. The first affidavit, from Jim Wedeberg, who is a self-described "landman" or "abstractor," states that he acquired the deeds attached to the opposition. See Record Document 25, Ex. A. The second affidavit, from Travis Sturdivant, a Professional Land Surveyor, states that he prepared a plat depicting the present day Franks property, with additional features added as requested by Franks. See id., Ex. B. Clearly, neither of these documents constitute evidence about the intent of the Levys or Texas & Pacific.

[8]The following analysis incorporates and largely adopts the well-reasoned opinion issued by the magistrate jude regarding the motion to dismiss, as his Report and Recommendation thoroughly analyzed both the code articles and the caselaw and does not require additional reasoning.

See La. Civ. Code art. 698. Article 699 gives several examples of predial servitudes, including rights of drain and rights of passage. The servitude of passage is further described as "the right for the benefit of the dominant estate whereby persons, animals, or vehicles are permitted to pass through the servient estate." La. Civ. Code art. 705. Once a document creating a predial servitude is recorded in the public records, it is binding on subsequent owners. See RCC Props., L.L.C. v. Wenstar Prop., L.P., 930 So.2d 1233, 1237 (La. App. 2d Cir. 2006).

Parol evidence may be admissible if a writing is ambiguous. See McLure v. Alexandria Golf & Country Club, Inc., 344 So.2d 1080, 1088 (La. App. 3d Cir. 1977); Yiannopoulos, 4 La. Civ. Law Treatise, Predial Servitudes § 128 (3d ed.) ("If the instrument is ambiguous, extrinsic evidence to prove the kind of right that the parties intended to create is admissible."). But when a Louisiana contract is subject to interpretation from the four corners of the instrument, without necessity of extrinsic evidence, interpretation of the contract is a matter of law for the court. See Tex. E. Transmission Corp. v. Amerada Hess Corp., 145 F.3d 737, 741 (5th Cir. 1998). For the reasons set forth below, the court does not find the instrument to be ambiguous.

Several Civil Code articles address how to decide the nature of a servitude. An initial rule is that "[d]oubt as to the existence, extent, or manner of exercise of a

predial servitude shall be resolved in favor of the servient estate." La. Civ. Code art. 730. Servitudes are restraints on the free disposal and use of property, so they are not entitled to be viewed with favor. See St. Andrews Place, Inc. v. City of Shreveport, 914 So.2d 1203, 1210 (La. App. 2d Cir. 2005).

Sometimes the parties will specifically state in the act that the right created is a predial servitude. See Buckhorn Ranch, L.L.C. v. Holt, 10 So. 3d 367 (La. App. 3d Cir. 2009) (parties to rail crossing agreement stated that "these servitudes shall be predial servitudes."). But "[a] charge established on an estate expressly for the benefit of another estate is a predial servitude although it is not so designated." La. Civ. Code art. 731.

If the act does not declare expressly that the right granted is for the benefit of an estate or for the benefit of a particular person, the Civil Code provides rules to determine the nature of the right. See La. Civ. Code art. 732. "When the right granted be of a nature to confer an advantage on an estate, it is presumed to be a predial servitude." La. Civ. Code art. 733. "When the right granted is merely for the convenience of a person, it is not considered to be a predial servitude, unless it is acquired by a person as owner of an estate for himself, his heirs and assigns." La. Civ. Code art. 734.

The resolution of whether a contract was intended to create a predial servitude

is governed by both the rules that apply specifically to instruments that purport to create a servitude and the general rules of construction of agreements. See Yiannopoulos, 4 La. Civ. Law Treatise, Predial Services § 128 (3d ed.); Ryan v. Monet, 666 So. 2d 711, 714 (La. App. 4th Cir. 1995). A general rule applicable to this case is Louisiana Civil Code article 2050, which states: "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." Related jurisprudence holds that "a contract must be viewed as a whole and, if possible, practical effect given to all its parts, according to each the sense that results from the entire agreement so as to avoid neutralizing or ignoring any of them or treating them as surplusage." Lambert v. Md. Cas. Co., 418 So.2d 553, 559-60 (La. 1982). "Some effect is to be given to every word or clause if possible for a court may not impute to the parties the use of language without meaning and effect." Id. Louisiana Civil Code article 2046 provides that "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."[9]

---

[9]To determine intent, the Civil Code instructs in article 2053 that "[a] doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties." Franks is choosing this approach in an attempt to create a genuine dispute of material fact

Franks contends that the "plain language of the 1923 Act creates three predial servitudes of passage across the T&P railroad track and strip in favor of the estate which was, at the time, the Levy Plantation." Record Document 25 at 14. Franks, however, only discusses the Louisiana Civil Code articles that apply to servitudes. Franks then attempts to explain the "successors and assigns" language as "bad lawyering" or surplusage. See id. at 7, n. 9. This attempt by Franks, however, ignores the Civil Code's instructions that words are to be given their generally prevailing meaning, surplusage is to be avoided, and when the words of a contract are clear, explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. See La. Civ. Code arts. 2046 and 2047.

As mentioned, Franks focuses on the servitude-specific articles and argues that a right of passage is of a nature to confer an advantage on an estate, rather than an

---

where none exists. Although Franks has admitted that the words of the contract are clear and unambiguous, Franks nonetheless has attempted to delve into the parties' intent. See Record Document 25 at 2 ("Franks shows that the clear and unambiguous language in the 1923 Act. . . ."). In support of this approach, Franks has attempted to argue equity, usage and conduct of the parties. However, this search is unnecessary due to this court's determination that the language of the contract is clear and unambiguous. Furthermore, all arguments that have been made by Franks regarding the parties' intent are purely speculation and allegation, with no competent summary judgment evidence in support whatsoever.

Union Pacific counters Franks's speculation with its own, in an attempt to show "equally persuasive speculation" about the deal. Record Document 30 at 5. Although unnecessary, these submissions by Union Pacific highlight the absurdity of speculations without evidence.

individual, so it is presumed under Louisiana Civil Code article 733 to be a predial servitude. Franks refers this court to the same cases it relied upon when it opposed Union Pacific's motion to dismiss. Despite the fact that the magistrate judge thoroughly analyzed and, most importantly, distinguished each of the cases upon which Franks relied, Franks remains steadfastly devoted to the use of the cases in lieu of urging new arguments to this court. Therefore, a rather repetitive exposition of the caselaw and analysis follows.

Louisiana cases have found a number of times that a right of passage was, based on its nature, a predial servitude, despite the lack of such a label in the instrument that created it. In Burgas v. Stoutz, 141 So. 67 (La. 1932), an agreement between the parties stated that the purchaser, its successors and assigns, would have the privilege of using a paved driveway on the servient estate. The act that was recorded in the conveyance record contained a similar provision but omitted the "successor and assigns" language. The court, observing that the act did not declare whether the right was given for the benefit of an estate, looked to whether the right was of a nature to advantage an estate or merely a person, pursuant to Article 736 (now embodied in Article 733). The court held that the right of passage was of "real utility" to the adjacent dominant estate, which had no driveway, and the right would allow the dominant tract "more free space either for building or for flowers, or for a

garden, and making the property more desirable and valuable." Burgas, 141 So. 69. The court found it "significant" that the right of passage was not given to a named individual, but to "the purchaser," and "thereby connecting the servitude with the property as a real advantage to it, and not as a mere matter of convenience to a particular person and terminating with him." Id. Accordingly, the right of passage was found to be a predial servitude.

A similar result was reached in McLure v. Alexandria Golf & Country Club, Inc., 344 So.2d 1080, 1088 (La. App. 3rd Cir. 1977). A landowner sold a large tract to a country club, with the intention to move his houses and barns from the property by a deadline. He intended to purchase other adjacent property and establish a home on that land. The act of sale to the country club provided that if he were to acquire that property, then "the vendee herein agrees to allow the vendor an outlet to Highway No. 165 and over and across the property herein purchased. . . ." Id. The appellate court held that the act established a predial servitude that did not expire with the death of the vendor. The court began by quickly rejecting the argument that the servitude could not be predial because it was given to the "vendor" and not to the "vendor, his heirs and assigns," because it had been "specifically held that the addition of such language is not necessary for property rights in the nature of a servitude to pass to one's heirs." Id. at 1089. The court went on to examine the

14

nature of the right and concluded that the right of passage was a predial servitude.

The act of sale in <u>Whitney National Bank v. Poydras Center Associates</u>, 487 So.2d. 120 (La. App. 4th Cir. 1986) sold a piece of property that was described as being along an alley common to that property and other property owned by the seller. The act contained language regarding the right of the buyer, Metropolitan Bank, to use the alley: "Said Metropolitan Bank to have the right to use the aforesaid common alley with the right to have opening thereon . . . ." <u>Id.</u> at 121. The act also provided that it was agreed "the alley is to be no thoroughfare except to the Metropolitan Bank . . . ." <u>Id.</u> The act concluded: "To have and to hold the above described property unto the said purchaser, its heirs and assigns forever." <u>Id.</u> The court said that it mattered not that the language of the act was couched in personal terms because the right created was a real advantage to the dominant estate.

In <u>Taylor v. New Orleans Terminal Company</u>, 126 La. 420, 52 So. 562 (La. 1910), a railroad acquired land, which cut off access to another tract owned by the plaintiff. The railroad agreed, in a document not quoted in the decision, to fence and drain the land and construct crossings, but it did not do so. The court said that the right to the improvements "followed the property and was not personal to the owner." <u>Id.</u> at 425, 52 So. at 564. The decision is perhaps of limited influence because of the shortage of facts recited in it and the suggestion that the crossings were required to

obtain access to a tract of land, but it does demonstrate that servitudes of passage tend to be thought of as predial in nature.

The 1923 deed must be examined in light of Louisiana law. The federal court's Erie obligation, in applying that law, is to the Civil Code, the solemn expression of legislative will. Caselaw is invaluable as a previous interpretation, but even if it rises to the level of *jurisprudence constante*, it is merely "secondary information." American Intern. Specialty Lines Ins. Co. v. Canal Indem. Co., 352 F.3d 254, 260-61 (5th Cir. 2003); Songbyrd, Inc. v. Bearsville Records, Inc., 104 F.3d 773, 776-77 (5th Cir. 1997). Again, the last paragraph of the 1923 deed that addresses the railroad crossings provides as follows:

> It is understood and agreed that the said Texas & Pacific Railway Company shall fence said strip of ground and shall maintain said fence at its own expense and shall provide three crossings across said strip at the points indicated on said Blue Print hereto attached and made part hereof . . . .

Record Document 1, Ex. A. If this were the end of the paragraph, there would be a strong argument, under Louisiana Civil Code article 733, the right granted was of a nature to confer a right on the Levy estate rather than a person, so it is presumed to be a predial servitude. Servitudes of passage are naturally thought of as benefitting an estate, no matter the owner, and passing with ownership of the estate. The Louisiana judicial decisions cited above have treated them the same way, even when

16

the granting language did not identify the right as predial or say it was for the benefits of heirs and assigns.

The sentence that created the railroad crossings obligation did not, however, end with the portion quoted above. It continued: "and the said Texas & Pacific Railway hereby binds itself, *its successors and assigns*, to furnish proper drainage out-lets across the land hereinabove conveyed." Id. (emphasis added.) The crossings clause must be read with an awareness of the drainage clause in the same sentence and interpreted in such a way that language in the agreement is not rendered mere surplusage. See Lambert, 418 So.2d at 559-60. When the railroad bound itself to furnish proper drainage outlets, it specifically said that it bound itself, its successors and assigns. But when the railroad agreed, in the same sentence, to fence the strip and provide three crossings, the written agreement did not expressly bind the railroad's successors and assigns with respect to those obligations. If the parties intended all of the obligations to be predial in nature, they could have easily applied the successors and assigns language to the entire sentence. They did not. Instead, they specifically made one obligation (drainage) binding on successors and assigns, and did not impose that requirement on two other obligations (fencing and crossings). The most reasonable interpretation in accordance with Louisiana law is that the

obligations are to be treated differently.[10]

If the court were to interpret the crossings clause as a predial servitude, it would render the successors and assigns language in the drainage clause mere empty surplusage, which should be avoided. See La. Civ. Code arts. 2046 and 2047; Tex. E. Transmission Corp., 145 F.3d at 744 (rejecting interpretation that would render one part of contract empty and meaningless, and reduce another to surplusage). The cases analyzed above are persuasive that the crossings clause, standing alone, would create a predial servitude, but the parties have not drawn the court's attention to a case that presented an additional clause, such as the drainage clause, that had to be considered in interpreting the contract. For that reason, the caselaw is of less assistance than usual. Furthermore, none of the deeds in the cases cited by Franks contained clear and unambiguous language which made one obligation applicable to successors and assigns and other obligations personal, as the language before the court clearly provides.

---

[10] One might argue that the parties did not stipulate expressly that the crossings requirement was predial or that it was binding on successors and assigns because they viewed the nature of the right as obvious, without any need for such identifying language. The right to drainage outlets, however, is at least equally of a nature to be thought of as benefitting a dominant estate rather than an individual person. The parties nonetheless saw fit to designate the drainage requirement as binding on successors and assigns, while imposing no such obligation with respect to the crossings requirement set forth in the same sentence.

The general principles regarding the interpretation of servitudes suggests that the crossing clause, standing alone, would create a predial servitude. The court must, however, keep in mind the provisions of the Civil Code that (1) each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole and (2) doubt as to the existence of a predial servitude shall be resolved in favor of the servient estate. The court must also, if possible, give practical effect to all parts of the contract, so as to avoid neutralizing or ignoring any of them or treating them as surplusage. See La. Civ. Code arts. 730 and 2050. The most faithful application of these principles to the language of the 1923 deed, as a whole, results in a determination that the crossings clause did not give rise to a predial servitude. This court should not, ninety years after the formation of the contract, interfere with the unambiguous language and attempt to substitute its judgment about what the parties meant or intended.

## III. CONCLUSION

Based on the foregoing analysis, Union Pacific's motion for summary judgment is **GRANTED**. See Record Document 23. All claims by Franks against Union Pacific are **DISMISSED WITH PREJUDICE.**

A judgment consistent with the terms of the Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 13th day of September, 2013.

_____
JUDGE TOM STAGG